IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DWAIN K. SINGER, CHRIS HOPSON, HENRY CHAVEZ and CHRIS RAY ROMERO, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br>vs.<br><br>WACKENHUT CORRECTIONS CORPORATION, a Florida corporation; CORRECTIONAL PROPERTIES TRUST, a Maryland real estate investment trust; CORRECTIONAL MEDICAL SERVICES, INC., a Missouri corporation; GUADALUPE COUNTY, NEW MEXICO; LEA COUNTY, NEW MEXICO; JOSEPH D. WILLIAMS, individually and in his official capacity as an agent of Lea County, New Mexico; AL C. PARKE, individually and in his official capacity as an agent of Lea County, New Mexico; ROBERT BRAVO, individually and in his official capacity as an agent of Guadalupe County, New Mexico; and ELOY MONDRAGON, individually and in his official capacity as an agent of Guadalupe County, New Mexico,<br><br>      Defendants. | No. CIV 99-1091 PK/RLP |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came on for a hearing on the Motion by Plaintiffs for Preliminary Injunction filed January 28, 2000 (doc. 14). Plaintiffs appeared through their attorneys, John Carr, Peter Cubra, Mark Donatelli and Al Gerhardstein and Defendant Wackenhut Corrections Corporation (WCC) appeared through its attorneys Rex Throckmorton and Henry Bohnhoff. The court heard evidence from numerous witnesses, reviewed numerous exhibits and considered the parties' submissions,[1] and pursuant to Fed. R. Civ. P. 52(a) now makes the following findings of fact and conclusions of law.

### Findings of Fact

A. <u>Background</u>

1. WCC operates two private prisons in New Mexico that incarcerate prisoners sentenced to confinement by New Mexico state courts. One facility, the Lea County Correctional Facility (LCCF) is located in Hobbs, New Mexico

---

[1] In deciding a request for a preliminary injunction, a court can consider sworn proof including affidavits, including those based upon belief or hearsay (though it may affect the weight given), depositions, transcripts of prior hearings and live testimony. <u>See</u> 13 James W. Moore, <u>Moore's Federal Practice</u> § 65.23 (1999); 19 <u>Federal Procedure, L. Ed.</u>, § 47.59 (1983). "[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely upon otherwise inadmissible evidence, including hearsay evidence." <u>See</u> <u>Sierra Club, Lone Star Chapter v. FDIC</u>, 992 F.2d 545, 551 (5th Cir. 1993).

and is owned by Correctional Properties Trust (CPT) and leased to WCC. The other, the Guadalupe County Correctional Facility (GCCF) is located in Santa Rosa, New Mexico and is owned and operated by WCC. State prisoners are housed at the facilities by virtue of an agreement between the New Mexico Corrections Department (NMCD) and the respective counties; the counties in turn have contracted with WCC to operate the facilities.

    2. Both facilities were designed and built as medium security facilities.

    3. LCCF was opened in May 1998; GCCF in February 1999. Three inmates have been murdered at LCCF, and a prison disturbance occurred in April 1999. One inmate and one guard were murdered in a prison disturbance at GCCF in August 1999.

    4. Three of the four named Plaintiff inmates, Chris Hobson, Henry Chavez and Chris Ray Romero are currently residing at LCCF; the other named Plaintiff inmate, Dwain K. Singer, was transferred out of LCCF in October 1999.

B. <u>Progress of the Plaintiffs' Suit and the Preliminary Injunctive Relief Requested</u>

    5. Plaintiffs seek certification to sue on behalf of a class of inmates who are or have been incarcerated at both facilities, pending resolution of that issue, the court has treated the action as a class action until determined otherwise. <u>See</u> Fed. R. Civ. P. 23(c)(1); Federal Judicial Center, <u>Manual for Complex Litigation</u> § 30.11 (1995).

6. Plaintiffs have joined Correctional Medical Services, Inc. (CMS) which provides psychiatric and other medical services to inmates at LCCF and GCCF under contract with the NMCD. No valid proof of service appears for CMS. Plaintiffs also have joined Defendants Lea County, Guadalupe County, CPT and the former and current wardens of the facilities. No proof of service appears for CPT or Al Parke, former Warden LCCF.

7. Plaintiffs seek a preliminary injunction only against WCC. Plaintiffs' latest formulation of requested injunctive relief, see doc. 32, seeks an injunction enjoining WCC from:

    a.    housing Plaintiff Chris Hopson at LCCF or, in the alternative, failing to accommodate his disability though adequate treatment and reclassification;

    b.    housing inmates who score above medium custody on a validated system of classification at LCCF or GCCF where inmates have access to each other;

    c.    accepting any new inmates at LCCF or GCCF who are not first reclassified based on the following information: (i) current and prior classification forms; (ii) admission summary report; (iii) disciplinary log; (iv) good time calculation form; (v) list of enemies and their current locations, and (vi) mental health classification sheet.

    d.    housing inmates at LCCF and GCCF without a facility classification

    plan that accommodates the security and mental health needs of the inmates;

 e. housing inmates at LCCF and GCCF without adequate access to mental health services, including psychiatric care;

 f. failing to accommodate the mental disability of named plaintiffs Henry Chavez, Chris Ray Romero and others who are similarly situated with adequate treatment so that they may participate in programs and services at LCCF and GCCF on an equal basis with other inmates.

C. <u>Grievance Procedure; Current Situation</u>

 8. A grievance procedure is available at LCCF and GCCF. By affidavit, named-Plaintiff Henry Chavez states that he has filed grievances concerning mental health treatment and inmate safety and named-Plaintiff Chris Ray Romero states that he has filed grievances concerning mental health treatment. Pl. Exs. 34 & 31. The other named-Plaintiffs (and the class members included in the request for injunctive relief) have not exhausted the grievance procedure. No evidence suggests that it would be futile to do so.

 9. Although LCCF and GCCF experienced some start-up problems, by December 1999 significant improvements in security and operations were apparent at both facilities.

D.   Classification and Assignment of Inmates

10.  The NMCD, not a party to the proceedings, classifies each inmate and determines the facility to which each inmate will be sent.  Thus, the NMCD exercises its statutory authority to assign inmates.  See N.M. Stat. Ann. § 31-20-2 (Michie 1994 Rep. Pamp.).  Under the "Wackenhut Agreement" (Def. Ex. A), the NMCD is responsible for (a) transferring an inmate from LCCF or GCCF if that inmate's mental health needs cannot be met, and (b) not transferring a new inmate to LCCF or GCCF if that inmate's mental health care needs cannot be met.

11.  WCC has no input into the external classification of inmates, although under an informal arrangement with the NMCD it may reject an inmate assigned to its facilities.  When an inmate is assigned to its facilities, WCC currently receives adequate information from the NMCD to make decisions about the security risk of the inmate and proper internal classification.  WCC places close security inmates, as well as those who may present a security threat (i.e. those that might be classified as close security in another system, but are classified as medium security by the NMCD classification system) in administrative segregation or other segregation with single celling.

12.  Dr. James Austin, an expert in prison inmate classification proffered by the Plaintiffs, issued a report in January 2000 critical of the NMCD classification system.  The report was not prepared for this litigation; it was

prepared for the state. Plaintiffs and WCC took Dr. Austin's deposition, however. In Dr. Austin's opinion, some inmates classified as medium security ought to be classified as close security and not placed in the general population of medium security facilities. Dr. Austin has recommended that the NMCD's classification system be revised and he is now consulting with the NMCD with respect to a new or different classification system. It will be six months before the new system is ready and it will take twelve months to implement. In Dr. Austin's opinion, it would be dangerous to attempt to implement it prematurely.

13. Dr. Austin had not visited LCCF. Although he did visit GCCF, he did not look at the quality of mental health care at LCCF or GCCF and expressed no opinion as to the quality of mental health treatment.

14. There are no close security inmates under the NMCD classification system, or inmates who may present a security threat (i.e. inmates that might be classified as close security in another system, but are classified as medium security by the NMCD classification system) mingling in the general population of LCCF. Plaintiffs presented no evidence to the contrary about GCCF.

15. Both LCCF and GCCF are in compliance with NMCD standards.

16. Incidents of violence experienced at LCCF and GCCF are not out of line with the degree of violence in other prisons of comparable size.

E. Psychiatric and Mental Health Care

17. WCC is not responsible for performing psychiatric assessments or providing the delivery of psychiatric services, those tasks having been subcontracted by the NMCD to CMS. Though named as a defendant but apparently not served, CMS did not participate in these proceedings.

18. Although some inmates experienced delays in psychiatric treatment, that delay is not attributable to WCC. Moreover, no life threatening events have occurred as a result, nor were any inmates placed in imminent harm as a result of having missed such treatment.

19. NMCD's director of psychiatry testified that, at the present time and at both LCCF and GCCF, inmates are being seen by psychiatrists, medication is being given, and the psychiatric care is adequate and in compliance with professional and NMCD standards. Eleven of the fourteen inmates identified by Plaintiffs' motion for preliminary injunction as needing psychiatric assessment have been referred to and seen by psychiatry. The other three were not seen for reasons beyond WCC's responsibility.

20. As of the date of the hearing and before this suit was filed, no additional mentally ill inmates were being sent to LCCF or GCCF by the NMCD. Tr. (2/17/2000) at 121-22.

21. As a result of various audits conducted, both LCCF and GCCF are in substantial compliance with applicable NMCD standards for mental health care. During an audit of LCCF in January 2000, the NMCD identified certain file

deficiencies in the LCCF mental health program and compiled a "To Do List," to remedy these deficiencies. None of the items on the "To Do List" were critical, and none involved a problem that would subject any inmate to immediate harm.

22. Both facilities are able to receive and provide adequate mental health care for inmates assigned to them by the NMCD, including named-Plaintiffs Hobson, Chavez and Romero. The WCC mental health staff at LCCF and GCCF has grown, and by all accounts has attempted to deliver quality mental health care services to inmates.

23. Those charged with operating these facilities have made every effort to fulfill their obligations and are very much concerned over the health and safety of the both staff and inmates.

Having made the foregoing Findings of Fact the Court makes the following Conclusions of Law.

## Conclusions of Law

1. The court has jurisdiction over the parties (Plaintiffs and WCC) and the subject matter hereto.

F.  Preliminary Injunction Standards

2. As movants seeking a preliminary injunction, Plaintiffs must demonstrate that (1) they will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood that they ultimately will prevail on the merits; (3) the threatened injury to them outweighs any harm the proposed

injunction may cause WCC and others; and (4) the injunction would not be contrary to the public interest. See ACLU v. Johnson, 194 F.3d 1149, 1155 (10th Cir.1999).

3. Any preliminary injunctive relief would also be governed by 18 U.S.C. § 3626(a)(2), however, Plaintiffs are not entitled to injunctive relief even if § 3626 does not apply. Section 3626(a)(2) provides:

> Preliminary injunctive relief.--In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90- day period.

a. Although Plaintiffs argue that § 3626 does not apply to private prison operators like WCC, the premise of their argument, that LCCF and GCCF are wholly private endeavors, is belied by their naming Lea County and Guadalupe County as Defendants. The relationship between WCC, the counties and the NMCD, as specified in the second amended complaint, has public and private aspects. See Second Amended Complaint filed January 20, 2000 (doc. 9) at 8, ¶¶ 30, 31; at 9 ¶ 38. Moreover, only the state has the power to imprison.

b.  Plaintiffs also contend that this action is not a "civil action with respect to prison conditions," defined in 18 U.S.C. § 3626(g)(2) as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings."  The court does not read the phrase "by government officials" as modifying and limiting "conditions of confinement."  Regardless, this suit is replete with actions of government officials, most notably the NMCD.

c.  Plaintiffs also contend that LCCF and GCCF are not "prisons," defined in 18 U.S.C. § 3626(g)(5) as "any Federal, State, or local facility that incarcerates or detains juveniles or adults accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law."  The phrase "Federal, State or local facility" appears to be an attempt to cover all types of facilities where prisoners are incarcerated and a governmental or quasi-governmental entity may be held to answer for prison conditions under federal law.  Regardless, the characterization of the facility as Federal, State or local need not be limited to who owns it.  Both LCCF and GCCF house state prisoners.  Construing the term "prison" to encompass LCCF and GCCF avoids conflict with § 3626(g)(3), which defines "prisoner" as "any person subject to incarceration, detention, or admission to any facility" without the limitation contained in § 3626(g)(5).  <u>See also</u> 42 U.S.C. § 1997e(h).

G.   Failure to Exhaust Administrative Remedies

4.  The named-Plaintiffs are "prisoners" as defined in 42 U.S.C. § 1997e(h), and this is a suit with respect to prison conditions under federal law. Even assuming that some Plaintiffs have, for purposes of the hearing, demonstrated exhaustion as to certain federal claims, not all of the Plaintiffs have demonstrated that they have exhausted their administrative remedies as required by 42 U.S.C. § 1997e(a); they should be required to demonstrate exhaustion before pursuing their federal claims.  See Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir. 1997); see also Farmer v. Brennan, 511 U.S. 825, 847 (1994) (favoring exhaustion under prior version of § 1997e).

H.   State as a Necessary Party

5.  The State of New Mexico, particularly the NMCD, is a necessary party and no reason has been advanced for its non-joinder.  See Fed. R. Civ. P. 19(a). The NMCD is responsible for inmate housing and classification.  See N.M. Stat. § 31-20-2 (Michie 1994 Rep. Pamp.).  It is also responsible for the provision of psychiatric care through its contractor CMS, and is integrally involved in the monitoring and provision of mental health care (including the assignment of inmates), through the "Wackenhut Agreement."  Complete relief could not be afforded without the NMCD, and proceeding without the NMCD would impair its core sovereign interests.  See Preiser v. Rodriguez, 411 U.S. 475, 491-92 (1973) ("It is difficult to imagine an activity which a State has a stronger interest, or one

that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."). Moreover, Fed. R. Civ. P. 65(d), making an order for injunctive relief binding only upon parties and requiring specificity, presents a real barrier to injunctive relief in these circumstances. Because the court is advised that WCC has served a motion to join the State, the court does not pass on whether joinder is feasible, and if not, whether the State is an indispensable party. See Fed. R. Civ. P. 19(b); Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 108-25 (1968).

I.  Traditional Preliminary Injunction Test Applied

6. The propriety of injunctive relief is based upon current attitudes and conduct. See Farmer, 511 U.S. at 845-47 (discussing requirements for injunctive relief). Plaintiffs have not shown that they will suffer irreparable harm at the hands of WCC unless an injunction issues, nor have they proven that any inmate is in immediate danger.

7. Plaintiffs have not demonstrated that there is a substantial likelihood that they ultimately will prevail on the merits. The purpose of injunctive relief is to prevent future violations of federal law, and although a court certainly can consider past violations in deciding whether injunctive relief is warranted, see United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953); Roe v. Cheyenne Mtn. Conference Resort, Inc., 124 F.3d 1221, 1229-31 (10th Cir. 1997), Plaintiffs have not at this point demonstrated past or ongoing violations.

a. Eighth Amendment claims. Without question, the state has a constitutional responsibility to provide necessary medical care to inmates including psychological and psychiatric care and to protect inmates from violent assault. See Farmer, 511 U.S. at 832-33; Estelle v. Gamble, 429 U.S. 97, 104 (1976); Riddle v. Mondragon, 83 F.3d 1197, 1202, 1204 (10th Cir. 1996). In this instance, other actors affect these functions including the NMCD and CMS. With respect to WCC, Plaintiffs have not shown the requisite objective and subjective components of an Eighth Amendment violation that could support the injunctive relief requested. See Craig v. Eberly, 164 F.3d 490, 495-96 (10th Cir. 1998). No evidence persuaded the court that WCC is deliberately indifferent to the protection and serious medical needs, including mental health and psychiatric needs, of the inmates. See Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by [the Eighth Amendment].").

b. ADA. Title II of the ADA, which prohibits a public entity from discriminating against a qualified individual with a disability on account of that disability, applies to state prisoners. See Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 209 (1998). To support a remedy, Plaintiffs must prove that an inmate was excluded from some prison service, program, or activity because of his disability. See 42 U.S.C. §12132; Love v. Westville Correctional Ctr., 103 F.3d 558, 559 (7th Cir. 1996). At this point, Plaintiffs have not proven

which **specific** services, programs, or activities from which they were excluded because their disabilities, let alone that each is a qualified individual with a disability. See McGuinness v. University of NM School of Medicine, 170 F.3d 974, 978-79 (10th Cir. 1998). Moreover, no evidence suggested that WCC discriminated against inmates in need of psychiatric care, when compared to other inmates. See Moore v. Prison Health Servs., Inc., 1999 WL 1079848 at *1 (10th Cir. 1999) (unpublished) (citing McNally v. Prison Health Servs., 46 F. Supp.2d 49, 58 (D. Me. 1999)).

  c. State law claims. Plaintiffs have not developed, let alone established a substantial likelihood of success, on their supplemental state law claims. Given current circumstances, a lack of timely psychiatric assessments in accordance with NMCD standards and operating agreements does not warrant injunctive relief.

  8. Having determined that the Plaintiffs do not face a threat or injury from the conduct of WCC, it is not necessary to address (a) whether any threatened injury to the Plaintiffs outweighs any harm the proposed injunction may cause WCC and others, and (b) whether the proposed injunction is in the public interest. Were I to consider these factors, I would conclude that the proposed injunction would seriously interfere with WCC's ability to operate the LCCF and GCCF, the NMCD's ability to run its prison system, and I would question whether a federal court should displace a state's attempt to design and

implement classification and mental health delivery systems.  The inmates barred from LCCF and GCCF under the proposed injunction would have to be placed elsewhere.  For these reasons, the proposed injunction would not be in the public interest.

9.      Many of the concerns raised in Plaintiffs' Motion for Preliminary Injunction filed January 28, 2000 (doc. 14) have been shown to be moot.  See, e.g., Finding Nos. 11, 14, 19, 21 & 22.  A federal court should hesitate to order mandatory injunctive relief when other levels and branches of government are attempting to solve prison management problems.  See Preiser, 411 U.S. at 491-92 (1973) (states should be given the first opportunity to correct prison administration errors); Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (considerations of prison administration properly weighed by legislature and prison administration, rather than the courts); Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994) ("Indeed, intrusive and far-reaching federal judicial intervention in the details of prison management is justifiable only where state officials have been afforded the opportunity to correct constitutional infirmities and have abdicated their responsibility to do so."); Dean v. Coughlin, 804 F.2d 207, 214 (2nd Cir.1986) (comity and federalism must be considered).  See also McClendon v. City of Albuquerque, 79 F.3d 1014, 1023 (10th Cir. 1996) (Kelly, J., in chambers) (same).  There is no need for the court to involve itself in WCC's operation of LCCF and GCCF.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Motion by Plaintiffs for Preliminary Injunction filed January 28, 2000 (doc. 14), is denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' request for reconsideration of the court's rulings not admitting the executive summary of the consultant's report (Pl. Ex. 7) and those sections not authored by Dr. Austin, is denied.[2]  See Plaintiffs' Amended Proposed Findings and Conclusions of Law in Support of Preliminary Injunction filed March 2, 2000 at

---

[2]Plaintiffs seek admissibility of the entire report (including the executive summary and sections not authored by Dr. Austin) as a public record under Fed. R. Evid. 803(8)(C), see Perrin v. Anderson, 784 F.2d 1040, 1046-47 (10th Cir. 1986), and as the basis of Dr. Austin's opinions under Fed. R. Evid. 703.  The degree to which Dr. Austin relied upon the "facts or data" contained in other sections of the report is not nearly as clear as Plaintiffs contend, and by its terms, Fed. R. Evid. 703 is not an independent basis of admissibility, especially for the opinions of others.  See, e.g., Kinser v. Gehl Co., 184 F.3d 1259, 1274-75 (10th Cir. 1999), overruled on other grounds, Weisgram v. Marley Co., No. 99-161, 2000 WL 196662 (Feb. 22, 2000); Marsee v. United States Tobacco Co., 866 F.2d 319, 322-23 (10th Cir. 1989); see also 3 Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence § 357 at 685 (2d ed. 1994) ("While an expert may consider remote statements that are not admitted and may be inadmissible, he cannot properly act as a conduit by presenting an opinion that is not his own opinion but that of someone else . . . .").  It is by no means clear that this report prepared by private consultants for a diverse group of governmental officials is a report of a public office or agency under Fed. R. Evid. 803(8).  Regardless, given the relaxed standard attendant to proof at the preliminary injunction stage, see supra n.1, the executive summary and other sections of the report could be admitted.  I decline to do so because they go far beyond the issues in this preliminary injunction hearing, and, given the timeframe, it would be manifestly unfair to require WCC to evaluate and respond to all of the data, conclusions and opinions contained therein.

13 n.1 (doc. 32) (contains request).

DATED this <u>13th</u> day of March 2000, at Santa Fe, New Mexico.


_____
United States Circuit Judge
Sitting by Designation