IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

DWAIN K. SINGER, CHRIS HOPSON, HENRY CHAVEZ and CHRIS RAY ROMERO, on behalf of themselves and all others similarly situated,

       Plaintiffs,

vs.

WACKENHUT CORRECTIONS CORPORATION, a Florida corporation; CORRECTIONAL PROPERTIES TRUST, a Maryland real estate investment trust; CORRECTIONAL MEDICAL SERVICES, INC., a Missouri corporation; GUADALUPE COUNTY, NEW MEXICO; LEA COUNTY, NEW MEXICO; JOSEPH R. WILLIAMS, individually and in his official capacity as an agent of Lea County, New Mexico; AL C. PARKE, individually and in his official capacity as an agent of Lea County, New Mexico; ROBERT BRAVO, individually and in his official capacity as an agent of Guadalupe  County, New Mexico; ELOY MONDRAGON, individually and in his official capacity as an agent of Guadalupe County, New Mexico; GARY JOHNSON, in his official capacity as Governor of the State of New Mexico; ROBERT J. PERRY, individually and in his official capacity as Secretary of the New Mexico Department of Corrections; and the NEW MEXICO DEPARTMENT OF CORRECTIONS,

       Defendants.

No. CIV 99-1091 PK/RLP

MEMORANDUM OPINION AND ORDER

---

THIS MATTER comes on for consideration of Defendant Governor Gary

E. Johnson's Motion to Dismiss filed June 30, 2000 (doc. 89), and the court,

being advised fully in the premises, finds that the motion should be granted as

follows.

## Background

Plaintiffs seek to initiate a civil rights class action on behalf of inmates

with mental or developmental disabilities incarcerated in two private prisons.

They challenge the inmate assignment and classification system, various

conditions of confinement, and seek injunctive relief and damages.  They also

seek relief on several supplemental state law claims.  See 28 U.S.C. § 1367(a).

In the current complaint spanning 31 pages and 137 paragraphs, Defendant

Johnson is specifically named in only one paragraph in the section describing the

parties.[1]  He has moved to dismiss the complaint against him with prejudice,

---

[1]     Plaintiffs allege:

19.    Defendant GARY JOHNSON at all relevant times has been the
       Governor of the State of New Mexico.  He is sued in his official
       capacity.  Under state law, Johnson is responsible for supervision
       [sic] Defendant Robert J. Perry's administration of the New Mexico
       Department of Corrections.  Johnson also is responsible for
       proposing to the New Mexico legislature a budget for the New
       Mexico Department of Corrections and for assuring that Defendant
       Perry operates the New Mexico Department of Corrections in
                                                          (continued...)

relying on a variety of grounds, several of which the court need not reach because

of Eleventh Amendment immunity.


## Discussion

In resolving a motion to dismiss for failure to state a claim under Fed. R.

Civ. P. 12(b)(6), the court takes all well-pleaded allegations contained in the

complaint as true.  See Sutton v. United Airlines, 527 U.S. 471, 475 (1999).

Well pleaded factual allegations are construed in the light most favorable to the

Plaintiffs.  See Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 619

(10th Cir. 1998).  At the same time, the court is not allowed to assume that

Plaintiffs "can prove facts that [they have] not alleged or that the [D]efendants

have violated the . . . laws in ways that have not been alleged."  Associated Gen.

Contractors v. California State Council of Carpenters, 459 U.S. 519, 526 (1983)

(footnote omitted).  Under these standards, dismissal is appropriate only if "it

---

[1](...continued)
>      conformity with federal and state law.  Upon information and belief,
>      Johnson has been directly involved in major decisions that lead to
>      the construction and use of LCCF and GCCF to house inmates
>      entrusted to the custody of the New Mexico Department of
>      Corrections, vetoed legislation directing affecting [sic] the manner in
>      which LCCF and GCCF were constructed and now operated and has
>      been involved in decisions regarding the placement of class members
>      at LCCF and GCCF, as wall [sic] as other major decisions regarding
>      the construction and operation of LCCF and GCCF.

Third Amended Complaint filed April 21, 2000 at 6-7, ¶ 19 (doc. 56).

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

      1.     Eleventh Amendment Immunity

Defendant Johnson contends that he is immune from suit under the Eleventh Amendment. See Defendant Governor Gary E. Johnson's Motion to Dismiss filed June 30, 2000 at 2 (doc. 89); Defendant Governor Gary E. Johnson's Memorandum in Support of Motion to Dismiss filed June 30, 2000 at 9 (doc. 90). "[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States." Kimel v. Florida Bd. of Regents, 120 S. Ct. 631, 640 (2000); see also Edelman v. Jordan, 415 U.S. 651, 662-63 (1973). A State and its agencies are immune from suit in federal court under the Eleventh Amendment regardless of the type of relief sought. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996). Under the Eleventh Amendment, a suit against a state official in his official capacity is generally regarded as a suit against the state. See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).

Here, Defendant Johnson is named solely is his official capacity; thus, Eleventh Amendment immunity attaches to any claims for monetary relief, as well as claims for retrospective declaratory or injunctive relief. See Ellis v. University of Kansas Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998); ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1187 (10th Cir. 1998), cert. denied, 525

U.S. 1122 (1999).  Based on the legal fiction established in <u>Ex Parte Young</u>, 209

U.S. 123, 159-60 (1908), however, Eleventh Amendment immunity does not

attach to claims against a state official for prospective declaratory and injunctive

relief based on ongoing violations of federal law--such claims are not considered

claims against the state.[2]  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S.

58, 71 n.10 (1989); <u>Branson School Dist. RE-82 v. Romer</u>, 161 F.3d 619, 631-32

(10th Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 1461 (1999).

Based upon the foregoing, all of the pendent state law claims against

Defendant Johnson must be dismissed.[3]  <u>See</u> <u>Pennhurst State Sch. & Hosp. v.</u>

<u>Halderman</u>, 465 U.S. 89, 106 (1984) (Eleventh Amendment precludes federal

court jurisdiction over state law claims against state officials for any type of

relief, including equitable relief).  Mindful of the preference for addressing

------

[2]Even prospective equitable relief against the state may be foreclosed
where the relief sought against the state official implicates "special [state]
sovereignty interests" and the relief requested would be the functional equivalent
of what would otherwise be barred by the Eleventh Amendment.  <u>See</u> <u>Idaho v.</u>
<u>Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 281 (1997) (Kennedy, J.); <u>ANR</u>
<u>Pipeline Co. v. Lafaver</u>, 150 F.3d 1178, 1190 (10th Cir. 1998) (relief involving
state's power to tax barred).

[3]These include:  "Third Claim - Breach of Contract; Fourth Claim - Assault
and Battery; Fifth Claim - Negligence; Fifth [sic] Claim - Violation of New
Mexico Statutes; Sixth Claim - [State Law] Fraud and Racketeering;
[Unnumbered Final Claim] - [State Law] Unfair Trade Practices."  Third
Amended Complaint filed April 21, 2000 at 28-31 (doc. 56).  The court notes that
the Third Claim, Fourth Claim, and Sixth Claim do not appear to run against
Defendant Johnson, but in an abundance of caution, the court will dismiss these
claims against him.

federal statutory construction questions before Eleventh Amendment immunity,

see Vermont Agency of Natural Resources v. United States, 120 S. Ct. 1858,

1865-66 (2000), the court now turns to the remaining federal claims, the "First

Claim - 42 U.S.C. § 1983" and the "Second Claim - ADA," in inverse order.

2.     ADA Claim

        The ADA claim must be dismissed against Defendant Johnson because he

is not a proper party.  Title 42 U.S.C.§ 12132 on which Plaintiffs rely proscribes

disability discrimination by a public entity.  Defendant Johnson is not a public

entity--defined as "any State or local government" or "any department, agency,

special purpose district, or other instrumentality of a State or States or local

government." 42 U.S.C. § 12131(1)(A) & (B); Walker v. Snyder, No. 98-3308,

2000 WL 626752, at * 1 (to appear at 213 F.3d 344) (7th Cir. May 16, 2000)

(natural persons are not proper defendants under ADA; claim runs against the

entity); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999) (en

banc) (holding plaintiff could not bring a § 1983 individual capacity action based

upon the ADA when that result was foreclosed under the ADA's comprehensive

remedial scheme), cert. dismissed, 120 S. Ct. 1265 (2000).

        Although Defendant Johnson is named in his official capacity (thus the

claim really runs against the state), Plaintiffs have already named the NMCD, a

proper party given present Tenth Circuit law on the ADA and the Eleventh

Amendment.  Given that Defendant Johnson's presence is superfluous, the ADA

claim will be dismissed against him without addressing the more difficult

question of whether the state has Eleventh Amendment immunity, i.e. whether

Congress's abrogation of Eleventh Amendment immunity in the ADA was in

excess of its § 5 power under the Fourteenth Amendment.  See University of

Alabama v. Garrett, 120 S. Ct. 1669 (2000) (granting certiorari on this issue);

Martin v. Kansas, 190 F.3d 1120, 1128 (10th Cir. 1999) (holding pre-Kimel that

abrogation was valid).

3.      The § 1983 Claim.

        The § 1983 claim must be dismissed against Defendant Johnson, to the

extent that it seeks other than prospective equitable relief.  When a § 1983 claim

is for prospective equitable relief against a state official in his official capacity,

the state official is deemed a "person" amenable to suit under § 1983.  See Will,

491 U.S. at 71 n.10.  Otherwise, "neither a State, nor its officials acting in their

official capacities are 'persons' under § 1983."  Id. at 71.  The § 1983 claims

against Defendant Johnson, save those seeking prospective equitable relief, must

be dismissed with prejudice on this basis.[4]  See McLaughlin v. Board of Trustees

of State Colleges, No. 99-1149, 2000 WL 825707, at *4 n.2 (10th Cir. June 26,

2000).

---

[4]As previously discussed, the Eleventh Amendment would also provide
immunity to Defendant Johnson on the § 1983 claim from all forms of relief, save
prospective equitable relief.

As discussed, the Eleventh Amendment is not a bar against prospective

declaratory and injunctive relief against a state official named in his official

capacity for ongoing violations of federal law under Ex Parte Young.  But there

are many limitations on this narrow exception to Eleventh Amendment immunity,

see ANR Pipeline, 150 F.3d at 1188-90, two of which come to mind.  First, the

named state official must have "some connection" with the act or conduct alleged

to be unconstitutional, see Ex Parte Young, 209 U.S. at 157 ("In making an

officer of the state a party defendant in a suit to enjoin the enforcement of an act

alleged to be unconstitutional, it is plain that such officer must have some

connection with the enforcement of the act, or else it is merely making him a

party as a representative of the state, and thereby attempting to make the state a

party.").  Second, because only prospective relief is allowed, it "does not permit

judgments against state officers declaring that they violated federal law in the

past."  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S.

139, 146 (1993); Papasan v. Allain, 478 U.S. 265, 277-78 (1986) ("Young has

been focused on cases in which a violation of federal law by a state official is

ongoing as opposed to cases in which federal law has been violated at one time or

over a period of time in the past . . . ."); Green v. Mansour, 474 U.S. 64, 68

(1985) ("[C]ompensatory or deterrence interests are insufficient to overcome the

dictates of the Eleventh Amendment.").

        The remaining issue is whether Plaintiffs have adequately linked this

Defendant to an ongoing constitutional violation, given normal pleading rules

applicable to § 1983 claims, i.e. Fed. R. Civ. P. 8(a).  See Crawford-El v. Briton,

523 U.S. 574, 594 (1998); Leatherman v. Tarrant County Narcotics Intelligence &

Coordination Unit, 507 U.S. 163, 168 (1993).  Even for the remedy of

prospective injunctive relief, Plaintiffs must adequately allege a constitutional

violation.  See Lewis v. Casey, 518 U.S. 343, 357 (1996); Missouri v. Jenkins,

515 U.S. 70, 88 (1995); Milliken v. Bradley (Milliken II), 433 U.S. 267, 281-82

(1977).  Where a government official is sued in his official capacity for damages,

the real party in interest is the entity, with the corresponding requirement that the

entity's policy or custom result in the constitutional deprivation.  See Board of

County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403-404

(1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); see also Andrus v. Arkansas, 197

F.3d 953, 955-56 (8th Cir. 1999) (complaint adequately stated an official

capacity claim for injunctive relief against state police director as final policy-

maker for state police).

Where a government official is sued in his individual capacity, some

connection between the alleged constitutional violation and the defendant must

exist.  "The requisite personal involvement exists if, for example, the defendant

(1) created or permitted the continuance of a policy that caused the alleged

deprivation, (2) failed to remedy the alleged deprivation after learning of it, or

(3) was grossly negligent in managing subordinates who caused the alleged

deprivation."  K & A Radiologic Tech. Servs., Inc. v. Commissioner of the Dep't

of Health, 189 F.3d 273, 278 (2d Cir. 1999) (§ 1983 individual capacity claims).

See also Rizzo v. Goode, 423 U.S. 362, 370-71 (1976) (supervisory liability to

support equitable relief requires an affirmative link between misconduct and "the

adoption of any plan or policy by [defendant]–express or otherwise–showing [his]

authorization or approval of such misconduct").  Respondeat superior is not a

permissible basis for liability under § 1983.  See Monnell v. New York Dep't of

Social Servs., 436 U.S. 658, 691 (1978); Bennett v. Passic, 545 F.2d 1260,

1262-63 (10th Cir.1976) (requiring personal participation in a § 1983 claim).

     In arguing that the Third Amended Complaint shows a causal link between

Defendant Johnson and the alleged constitutional violations, Plaintiffs cite a

number of paragraphs that name specific Defendants, but not Defendant Johnson.

According to Plaintiffs, "[w]hile the Governor is not specifically mentioned in

these allegations, the general allegations in Paragraph 19 [supra n.1] regarding

the Governor's involvement in the transfers to LCCF and GCCF make it clear

that these allegations apply to the Governor."  Plaintiffs' Response in Opposition

to Defendant Governor Gary E. Johnson's Motion To Dismiss filed June 30, 2000

at 4 (doc. 91).  The court must respectfully disagree.  A construction of the

complaint contrary to the words contained therein does not give Defendant

Johnson fair notice of what the Plaintiffs' claim is, nor the grounds on which it

rests.  See Conley, 355 U.S. at 47.  The allegations in question highlight the

ability of the Plaintiffs to name specific Defendants (other that Defendant

Johnson) in particular allegations where appropriate.

Paragraph 19 of the Third Amended Complaint is too slender a reed.  That

paragraph begins by listing certain general responsibilities of the governor.  But

merely because a governor has power to make general policy and budget

recommendations and administrative appointments does not suffice for the

requisite involvement.  See Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3rd Cir.

1988); Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist., 714 F.2d

946, 953 (9th Cir. 1983).  The § 1983 claim in this case is unlike a facial

challenge to a state statute on constitutional grounds where such general

allegations might be sufficient.  See American Civil Liberties Union v. Johnson,

194 F.3d 1149, 1163 (10th Cir. 1999); see also Ex Parte Young, 209 U.S. at 157.

Paragraph 19 further alleges that Defendant Johnson "has been directly

involved" and "has been involved" in unspecified decisions and vetoes involving

the construction and operation of private prisons.  Coming closer, is an allegation

that Defendant Johnson "has been involved in decisions regarding the placement

of class members at LCCF and GCCF."[5]  But if "involvement" in unspecified

---

[5]Plaintiffs' Response in Opposition to Defendant Gary E. Johnson's Motion
to Dismiss filed June 30, 2000 at 7 (doc. 91), explains that the Third Amended
Complaint encompasses the "Governor's role . . . in transferring inmates known
to have mental disabilities to those facilities [LCCF and GCCF] with the
knowledge that those facilities lacked the personnel and resources necessary to
(continued...)

decisions by state executives were enough, there would be no end to § 1983

liability.  Neither Paragraph 19; nor the conclusory allegations contained in the

Third Amended Complaint that refer to "Defendants" as a whole, <u>see</u> <u>e.g.</u>, Third

Amended Complaint filed April 21, 2000 at 27, ¶¶ 117, 118, 119, 122 (doc. 56),

adequately focus the § 1983 claim on Defendant Johnson.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that

Defendant Governor Gary E. Johnson's Motion to Dismiss filed June 30, 2000

(doc. 89), is granted as follows:

1.      The supplemental state law claims against Defendant Johnson are

dismissed based upon Eleventh Amendment immunity.

2.      The "First Claim - 42 U.S.C. § 1983" against Defendant Johnson is

dismissed with prejudice.

3.      The "Second Claim - ADA" against Defendant Johnson is dismissed

with prejudice.

4.      Accordingly, Defendant Johnson is dismissed as a party-defendant.

---

[5](...continued)
provide needed mental health care."  This allegation, to the extent it may be made
consistent with Fed. R. Civ. P. 11(b)(3), is more specific than what appears in the
Third Amended Complaint, insofar as it pertains to Defendant Johnson.
Regardless, the court is limited to the Third Amended Complaint itself in
determining its sufficiency.  <u>See</u> <u>Gaines-Tabb</u>, 160 F.3d at 619 ("Plaintiffs may
not rely upon arguments extending beyond the allegations of the complaint to
overcome pleading deficiencies; rather, the 'complaint itself' must show that
plaintiffs are entitled to relief.").

DATED this <u>11th</u> day of July 2000, at Santa Fe, New Mexico.


_____
United States Circuit Judge
Sitting by Designation

Counsel:

John L. Sullivan and Mark H. Donatelli, Rothstein, Donatelli, Hughes,
Dahlstrom, Schoenburg & Enfield, LLP, Santa Fe, New Mexico, Peter M. Cubra,
Albuquerque, New Mexico, and Alphonse A. Gerhardstein, Laufman &
Gerhardstein, Cincinnati, Ohio, for Plaintiffs.

Robert T. Booms, Butt Thornton & Baehr PC, Albuquerque, New Mexico, for
Defendant Gary Johnson.